IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JERRY CHAPMAN, Individually** | § | |
| **and On Behalf of All Others Similarly** | § | |
| **Situated**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:09-CV-0188-L** |
| | § | |
| **COMMONWEALTH LAND TITLE** | § | |
| **INSURANCE COMPANY**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed August 16, 2010.

After carefully reviewing the motion, response, reply, record, and applicable law, the court **grants**

**in part** and **denies in part** Defendant's Motion for Summary Judgment.

## I.      Procedural and Factual Background

Plaintiff Jerry Chapman ("Chapman" or "Plaintiff") filed this putative class action lawsuit

against Defendant Commonwealth Land Title Insurance Company ("Commonwealth" or

"Defendant") on January 29, 2009. Plaintiff's Original Complaint (the "Complaint") asserts claims

of money had and received, unjust enrichment, violations of 12 U.S.C. § 2607(b) of the Real Estate

Settlement Procedures Act ("RESPA"), and breach of implied contract.

In the Complaint, Chapman contends that Defendant improperly charged him an unearned

fee of $260.50 for lender title insurance in connection with the refinancing of his mortgage loan.

Plaintiff contends that in December of 2002, he obtained a mortgage loan on his home from Lonestar

Residential Lending in the principal amount of $148,000 (the "first loan"). Following closing, the

lender required Plaintiff to purchase a lender title policy in the amount of the note on his home. Plaintiff refinanced the first loan on September 12, 2007 (the "refinance loan"). Plaintiff obtained the refinance loan from JP Morgan Chase Bank, N.A. ("Chase") in the principal amount of $165,749. At closing, Plaintiff was required to purchase a lender title policy issued by Defendant, which insured Chase. Plaintiff was required to pay a premium of $1,303.45 to Commonwealth for the lender title policy.

Plaintiff contends that because the reissue lender title policy was issued fewer than five years after the date of the prior loan, under Texas law, Defendant was required to discount ("discount" or "R-8 credit") the basic premium charge for the reissue policy. Plaintiff maintains that the payoff on the mortgage was $137, 204.53. The title agent recorded a Release of Lien, identifying the prior mortgage in the Deed Records of Dallas County, Texas, which acknowledged that the prior loan had been paid in full. The title agent allegedly charged Plaintiff $24 to record the release. The Basic Rate premium in effect at the time based upon the payoff balance was $1,042. Chapman contends that he was entitled to a discount equal to 25% of that amount, a total of $260.50. Plaintiff contends that he was not given the discount. Consequently, Plaintiff contends that he was charged an allegedly unearned fee of $260.50 for lender title insurance. Chapman argues that Defendant did not perform any services to earn the $260.50 fee. Plaintiff contends that the allegedly illegal unearned premium was split between Commonwealth, the title agent that issued the policy, and the fee attorney that assisted with closing the transaction.

The court entered judgment on February 28, 2011. The court determined that Chapman failed to raise a genuine issue of material fact as to the doctrine of equitable tolling regarding the statute of limitations on his RESPA claim. Further, the court, applying principles of comity, determined

that there was no reason for it to retain jurisdiction over Plaintiff's state law claims and dismissed the claims without prejudice.   In a memorandum opinion and order issued on September 1, 2011, the court vacated its February 28, 2011 judgment with respect to Plaintiff's state law claims and reinstated them.   By reinstating these claims, the court will now consider Defendant's summary judgment arguments related to Plaintiff's state law claims as the claims were incorrectly dismissed on alternative grounds.[*]

## II.   Defendant's Subject Matter Jurisdiction Contentions

In Defendant's motion, it argues that Plaintiff failed to exhaust his administrative remedies, and, thus, the court lacks subject matter jurisdiction over the state law claims.   In the alternative, Defendant contends that even if the court could exercise jurisdiction over the state law claims, it should defer from doing so under the primary jurisdiction doctrine.   Plaintiff disagrees with each of Defendant's contentions.

### A.   Legal Standard- Rule 12(b)(1) Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.   28 U.S.C. §§ 1331, 1332.   Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.   *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).   Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss

---

[*]Defendant classifies its motion as one for summary judgment, but it is more properly characterized as a motion to dismiss pursuant to Rule 12(b)(1) to the extent that Plaintiff seeks dismissal of the state law claims for lack of jurisdiction.   His position is that the Texas Department of Insurance has exclusive jurisdiction and that until Plaintiff exhausts his administrative remedies, the lawsuit is premature and, thus, the court lacks subject matter jurisdiction.

an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### B.     Analysis

Commonwealth argues that the court lacks subject matter jurisdiction over Plaintiff's state law claims because the Texas Department of Insurance ("TDI") has exclusive jurisdiction over such claims, and Plaintiff has not exhausted his administrative remedies. Specifically, Commonwealth contends that claims arising out of alleged violations of the Texas Title Insurance Act (the "TTIA") fall within the exclusive jurisdiction of the TDI. Defendant contends that the Texas Legislature

expressly wrote exclusive jurisdiction into the text of the TTIA.  Further, Defendant contends that the pervasive nature of the TTIA regulatory scheme confers exclusive jurisdiction to the TDI as evidenced by the Commissioner of the TDI's roles and responsibilities.  Defendant contends that the Commissioner, the chief executive of the TDI, adopted necessary rules and procedures for the enforcement of the TTIA. Thus, Defendant contends that the claims are better heard before the TDI because the Commissioner has specialized knowledge to resolve disputes concerning the TTIA.

Plaintiff responds that this court has subject matter jurisdiction over his state law claims. Specifically, Plaintiff contends that the Texas Legislature did not expressly confer exclusive jurisdiction over his state law claims.  Plaintiff argues that the Texas Legislature knows how to, and does, demonstrate the intent to expressly create exclusive jurisdiction or exclusive remedies in other codes.  Further, Plaintiff contends that the phrase "completely regulate" does not rise to the level of language contained in other statutes that Texas courts have held create exclusive agency jurisdiction. Plaintiff also contends that no relevant "administrative remedy" exists for resolving disputes between consumers and insurers.  Plaintiff further argues that Defendant's pervasive scheme argument ignores the summary judgment evidence.

Defendant replies that the express language of the TTIA clearly grants exclusive jurisdiction to TDI.  Defendant argues that the absence of the words "exclusive jurisdiction" does not negate the effect of similar words like "express legislative intent" and "completely regulate."  Defendant further contends that the use of the word "exclusive" in other statutes does not negate exclusive jurisdiction in this situation. Defendant also contends that Plaintiff's pervasive regulatory scheme arguments fail because among Texas statutes the TTIA is uniquely pervasive.

Under Texas law, there is a presumption that state "district courts are authorized to resolve disputes unless the Constitution or other law conveys exclusive jurisdiction on another court or administrative agency." *In re Southwestern Bell Tel. Co., L.P.,* 235 S.W.3d 619, 624 (Tex. 2007). "Determining whether [an agency] has exclusive jurisdiction requires the examination and construction of the regulatory statutory scheme." *Thomas v. Long,* 207 S.W.3d 334, 340 (Tex. 2006).

Agencies may have exclusive jurisdiction by an express grant of authority by the Legislature or by a pervasive regulatory scheme. An express grant of exclusive jurisdiction occurs "when the Legislature has granted that agency the sole authority to make an initial determination in a dispute." *In re Entergy Corp.,* 142 S.W.3d 316, 321 (Tex. 2004) (citations omitted). Likewise, an agency may have exclusive jurisdiction "when a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *In re Southwestern Bell Tel. Co., L.P.,* 235 S.W.3d at 624. (citations omitted). A pervasive regulatory scheme occurs when the regulation's structure and purpose is so extensive that it "occupies the entire field" of the problem to which the regulation is addressed.

"If an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking review of the agency's action." *Id.* (internal quotation marks and citations omitted). Further, "until the party has exhausted all administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction." *Id.* (internal quotation marks and citations omitted).

### 1.    Express Grant of Authority

The Texas Legislature has commissioned the TDI to "regulate the business of insurance in [Texas] . . . and ensure that [the Texas Insurance Code] and other laws regarding insurance and insurance companies are properly executed." Tex. Ins. Code Ann. § 31.002 (West 2009).  The Texas Insurance Code also mandates that "[t]he [C]ommissioner is the department's chief executive and administrative officer." *Id.* § 31.021.  The Commissioner is expressly given the power to administer and enforce the code.  *Id.*   The Legislature enacted the TTIA "to completely regulate the business of title insurance, including the direct issuance of policies and the reinsurance of any assumed risks, to (1) protect consumers and purchasers of title insurance policies; and (2) provide adequate and reasonable rates of return for title insurance companies and title insurance agents."  *Id.* § 2501.002(a).  Further, the Act states that "[i]t is the express legislative intent that [the TTIA] accomplish [this] purpose." *Id.* § 2501.002(b).

After reviewing the TTIA and the parties' arguments, the court determines that it does not confer exclusive jurisdiction of TTIA claims on the TDI.  First, the Legislature did not expressly confer exclusive jurisdiction of TTIA claims on the TDI.  Defendant contends that Section 2501.002 indicates the Legislature's express indication of exclusive jurisdiction because the purpose of the TTIA is to "completely regulate" the business of title insurance.  The court is unswayed by Defendant's argument. The term "completely regulate" does not have the same meaning as a grant of "exclusive jurisdiction" over Plaintiff's claims.  Neither that section nor any other portion of the TTIA contains express language conferring exclusive jurisdiction on the TDI or the Commissioner over Chapman's state law claims.  The court is convinced that the legislative decision to not include the term "exclusive jurisdiction" was not just mere oversight because the Texas Legislature has

**Memorandum Opinion and Order- Page 7**

demonstrated that it knows how to confer such jurisdiction when it desires by carefully selecting the wording of the statute.  For example, the Texas Supreme Court held that the Legislature specifically granted the Public Utilities Commission exclusive original jurisdiction when the Act provided that "the commission has *exclusive original jurisdiction* over the rates, operations, and services of an electric utility." *In re Entergy Corp.,* 142 S.W.3d 316, 323 (Tex. 2004) (citing Tex. Util. Code § 32.001 (West 2007)).  Moreover, in a case decided in the Northern District of Texas, the parties argued that the text of Section 2501.002 conferred exclusive jurisdiction on the TDI.  The court held that the language of the TTIA did not confer exclusive jurisdiction on the TDI and, thus, it would not "deprive litigants of a remedy provided by the TTIA on so slim a reed as the text of § 2501.002, including the Legislature's stated intention that the TTIA completely regulate the business of title insurance on real property." *Hancock v. Chicago Title Ins. Co.,* 635 F. Supp. 2d 539, 557 (N.D. Tex. 2009) (Fitzwater, C.J.).

## 2.   Pervasive Regulatory Scheme

Defendant contends that the Texas Legislature expressly grants the Commissioner the power to adopt any rules necessary and appropriate to implement the powers and duties of the TDI.  To accomplish that purpose, Defendant contends that the Texas Legislature enacted a pervasive regulatory scheme.  The court determines that the Legislature did not intend to grant exclusive jurisdiction through a pervasive regulatory scheme.

The TTIA provides that, with the exception of premiums for reinsurance between title insurance companies, "the commissioner shall fix and promulgate the premium rates to be charged . . . for title insurance policies," and that "a premium may not be charged for a title insurance policy . . . at a rate different from the rate fixed and promulgated by the [C]omissioner." Tex. Ins. Code

Ann. § 2703.151. In enforcing the terms of the TTIA, the Commissioner is given the ability to perform audits of title insurers. The audits encompass an inquiry into whether the title insurer charged an inaccurate premium, and particularly whether a refinance credit was improperly withheld or improperly calculated, in violation of R-8. *See* Def.'s App. at 31-4. If the Commissioner finds that the title insurer "charge[d] any premium rate . . . other than a premium rate proscribed by the [C]ommissioner," the insurer forfeits its right to engage in business in Texas. Tex. Ins. Code Ann. § 2551.351(a) (West 2009). After the Commissioner determines that a title insurer violated § 2551.351(a), the Commissioner "noti[fies] the company that the commissioner intends to revoke the company's certificate of authority on the expiration of the 30-day period following the date actual notice is delivered or mailed." *Id.* § 2551.353 (a). If a title insurer is affected by an action of the Commissioner, the insurer may "file an appeal of the commissioner's action in a district court in Travis County." *Id.* § 2551.354(a). Despite the TTIA only addressing appeals by title insurers, it incorporates Section 36.203 of the Insurance Code to allow relief for any other party at interest who is dissatisfied with an action of the Commissioner. The provision allows such parties to file a petition for judicial review against the Commissioner as defendant. *Id.* § 36.202. Like Section 2551.345(a), Section 36.202 of the Code, requires such petition to be filed in a district court in Travis County, and judicial review is pursuant to the substantial evidence rule. Matters that may be appealed include "a decision, order, rate, rule, form, or administrative or other ruling of the commissioner." *Id.* § 36.201.

This case is not analogous to the other statutes in which Texas courts have found a pervasive regulatory scheme. *See Texas Mut. Ins. Co. v. Eckerd Corp.,* 162 S.W.3d 261 (Tex. App.—Austin 2005, pet. denied). In *Eckerd,* the court held that the Legislature created a pervasive regulatory

scheme in that the statute demonstrated the Legislature's intent to grant a pervasive regulatory scheme to the Texas Workers' Compensation Commission because it was enacted to "strengthen the enforcement and adjudicatory powers of the Commission"; "the express language of the Act [ ] established mandatory reimbursement procedures and a system implemented by the Commission to review and resolve medical fee disputes"; and the "procedures expressly condition[ed] a party's access to the courts on first exhausting its administrative remedies." *Id.* at 265-66.  (internal quotation marks and citations omitted).  Using this authority and examining the history, purpose, and statutory language of the TTIA, the court determines that the Texas Legislature did not intend to confer exclusive jurisdiction of disputes arising under the TTIA to the Commissioner by means of a pervasive regulatory scheme.

As the statute does not demonstrate an extensive structure and purpose as to what can be regulated, the court determines that the Legislature did not intend for the Commissioner to have the sole authority to make the initial determination in rate disputes such as this case.  Moreover, the TTIA does not provide an administrative procedure through which a party may dispute rates charged by title insurers, pursue claims, or seek remedies against title insurers.  Finally, with respect to the auditing procedures, the court determines that authorization to audit title insurers every three years does not demonstrate that the Legislature intended to grant the Commissioner sole authority over disputes between title insurers and consumers. Without an administrative procedure, it is illogical to hold that an administrative remedy exists, and, thus, there is no bar to seeking judicial review. The TTIA focuses on regulating and sanctioning Texas title insurers.  It does not address the resolution of disputes between title insurers and consumers.

As the TTIA does not contain a express grant of exclusive jurisdiction, and there is no evidence of a pervasive regulatory scheme, the court concludes that the Texas Legislature did not create an administrative remedy for Plaintiff's state law claims. Accordingly, this court may exercise subject matter jurisdiction over Chapman's state law claims.

### 3.      Primary Jurisdiction

Defendant further contends that even if the court could exercise jurisdiction over the state law claims, it should defer from doing so under the primary jurisdiction doctrine. Specifically, Defendant contends that the court should defer to the TDI to make initial determinations on issues that are within the TDI's peculiar competence. Defendant also contends that because TDI has specialized experience and a statutory duty to apply its regulations uniformly, the court should defer to TDI to decide the issue.

Plaintiff responds that the doctrine of primary jurisdiction is inapplicable. Specifically, Plaintiff contends that the record does not support abating the action due to primary jurisdiction. Plaintiff argues that the issue of rate calculation is not complex. Plaintiff further contends that there is not a lack of uniformity in the interpretation or application of the R-8 credit in the Northern District of Texas. Defendant counters that Plaintiff's statement that there is not a lack of uniform interpretation or application of the R-8 credit in the Northern District of Texas is demonstrably false. Defendant contends that the issue of rate calculation is complex and that the TDI, not juries, should decide disputes about the applicability of the R-8 credit.

The doctrine of primary jurisdiction "operates to allocate power between courts and agencies when *both* have authority to make initial determinations in a dispute." *Subaru of America, Inc. v.*

**Memorandum Opinion and Order- Page 11**

*David McDavid Nissan,* 84 S.W.3d 212, 221 (Tex. 2002) (citations omitted).  The primary jurisdiction doctrine

> requires trial courts to allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.

*Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 208 (Tex. 2002) (citations omitted).

The court concludes that the primary jurisdiction doctrine does not apply in this instance, and it will not defer to the TDI.  As previously stated, there is no administrative procedure by which Plaintiff could seek an agency determination concerning his claims against Commonwealth.  The court finds that it is unnecessary to address the other arguments advanced by Defendant regarding primary jurisdiction. Accordingly, the court determines that the primary jurisdiction doctrine does not require deferring to the TDI, and the court will retain jurisdiction over this matter.  Therefore, the court will deny Defendant's motion with respect to the arguments concerning exhaustion of administrative remedies.

## III.   Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment, arguing that Texas law does not afford an independent cause of action for unjust enrichment and, thus, the court should dismiss Plaintiff's claim.  Defendant argues that Texas law recognizes that unjust enrichment is a broader term encompassing many different specific causes of action, including the claim for money had and received.  Plaintiff responds that Texas courts refer to and treat unjust enrichment as a "claim" and a "cause of action."  Plaintiff further contends that contrary to Defendant's assertions, claims for unjust enrichment and money had and received are distinct claims.  Defendant replies that the Texas

Supreme Court has never recognized unjust enrichment as an independent cause of action separate and distinct from a claim for money had and received.  Defendant contends that unjust enrichment is a theory of liability under which a plaintiff can pursue equitable causes of action, including money had and received.

### A.      Legal Standard- Motion for Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.    Analysis

Several courts have held that unjust enrichment is not a separate and a distinct cause of action. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (finding that "money had and received is an equitable doctrine applied to prevent unjust enrichment") (quoting *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 662 (Tex.App.—Dallas 1996, no pet.)); *Hancock*, 635 F. Supp. 2d at 560 (holding that a consumer's unjust enrichment claim failed where the "claims for unjust enrichment and money had and received essentially [sought] restitution of the R-8 reissue discount, and both [were] based on the equitable principle of preventing unjust enrichment"). Further, "Texas courts of appeals have consistently held that unjust enrichment is not

an independent cause of action, but instead a theory upon which an action for restitution may rest." *Id.* (citations omitted).  Although the Texas Supreme Court has referred to "unjust enrichment claims," those opinions do not characterize unjust enrichment as a separate cause of action from money had and received.  The opinions consider it to be a general theory of recovery for an equitable action seeking restitution. *Id.* (citations omitted).

Here, Plaintiff's claim for unjust enrichment fails.  Plaintiff's claims for unjust enrichment and money had and received both seek restitution of the R-8 reissue discount.  Further, both arise out of the equitable principle of preventing unjust enrichment.  As previously stated, Texas law does not allow an independent cause of action for unjust enrichment, and, thus, Plaintiff cannot maintain both causes of action.  Accordingly, the court determines that there are no genuine disputes of material fact as to this claim, and Defendant is entitled to judgment as a matter of law on Plaintiff's claim of unjust enrichment.

## IV.   Conclusion

For the reasons herein stated, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment.  The court **determines** that it has subject matter jurisdiction over Plaintiff's state law claims.  Further, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's claim for unjust enrichment, and Defendant is entitled to judgment as a matter of law on this claim.  The court therefore **dismisses with prejudice** Plaintiff's claim for unjust enrichment, and Plaintiff's claims for money had and received and breach of implied contract remain for trial or resolution by the parties.

As this case has been reopened, the motion for class certification is revived and ripe for ruling.  Further, in light of the posture of this case, the rulings made by the court, and the opinions

of the Fifth Circuit in *Benavides v. Chicago Title Ins. Co.,* 636 F.3d 699 (5th Cir. 2011); and

*Hamilton v. First Am. Title Ins. Co.,* 423 F. App'x. 425 (5th Cir. 2011) (cautioning plaintiff's

counsel to avoid unnecessarily extending class certification litigation in involving title insurance

premium discounts allegedly due under Texas law), Plaintiff shall inform the court in writing, **by**

**September 9, 2011**, whether he desires to move forward with his motion for class certification.

It **is so ordered** this 2nd day of September, 2011.

Sam A. Lindsay
United States District Judge